Filed 9/16/13  In re A.N. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.N., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SAMANTHA N., <br><br> Defendant and Appellant. | F066388 <br><br> (Super. Ct. No. JD129149) <br><br> **OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  Jon E. Stuebbe, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Theresa A. Goldner, County Counsel, and Mark L. Nations, Chief Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

*Before Kane, Acting P.J., Poochigian, J. and Franson, J.

**INTRODUCTION**

Samantha N. (mother) appeals from the juvenile court's dispositional findings on a Welfare and Institutions Code section 300[1] petition. Specifically, she alleges the juvenile court's findings that she made minimal progress in addressing causes that led to her daughter A.N.'s out-of-home placement are inaccurate. Mother also contends there is insufficient evidence to support the juvenile court's finding that A. faced a substantial risk of harm if she were returned to mother's care. Lastly, mother argues the juvenile court's determination has led to infringement of her fundamental right to parent and has compromised her ability to bond with her daughter. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In early June 2012, the Kern County Department of Human Services (the Department) received a referral that mother had given birth to A.; A.'s meconium tested positive for marijuana. Mother also tested positive for marijuana. She admitted using marijuana during her pregnancy to treat depression. Mother also admitted to auditory and visual hallucinations. Moreover, there were concerns regarding the condition of mother's home.

While A. remained hospitalized in the neonatal intensive care unit as a result of her premature birth, the Department conducted home visits. Mother's residence was deemed to be unfit by the Department. She was advised to make a number of repairs, to stop smoking inside the home, and to maintain the home's cleanliness. There were additional concerns regarding mother's boyfriend and his mental health. These issues continued to cause the Department concern until mother eventually moved out of the home.

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

On August 17, 2012, A. was ordered detained. A. had never resided with mother; after A.'s release from the hospital at about two months of age, she was placed in foster care.

At the jurisdictional hearing, the juvenile court found the allegations of the petition to be true and determined A. was a person described by subdivision (b) of section 300. It set the matter for disposition on October 24, 2012.

After a number of continuances, the disposition hearing was held December 20, 2012. At the conclusion of the proceeding, the juvenile court found a substantial danger would be posed to A. were she to be placed in the care of mother. Mother was afforded family reunification services. The juvenile court set the matter for a six-month review hearing and advised mother regarding her appellate rights. This appeal followed.

## DISCUSSION

On appeal, mother challenges the sufficiency of the evidence relating to the juvenile court's dispositional findings.

## I. Applicable Legal Standards

Section 300 provides, in relevant part:

> "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] … [¶]

> "(b) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, whether or

3.

not that evidence is contradicted, supports those findings. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A*. (1996) 52 Cal.App.4th 183, 193.)

> "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence … such that a reasonable trier of fact could find [that the order is appropriate]."' [Citation.]" (*In re Matthew S*. (1988) 201 Cal.App.3d 315, 321; see also *In re I.J.* (2013) 56 Cal.4th 766, 773.)

"Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. (*In re Casey D*. (1999) 70 Cal.App.4th 38, 52–53; *In re Rocco M*. (1991) 1 Cal.App.4th 814, 820; *In re Cheryl E*. (1984) 161 Cal.App.3d 587, 598.)" (*In re Alexis E*. (2009) 171 Cal.App.4th 438, 451.)

## II.     The Finding That Mother Made Minimal Progress

Mother contends the juvenile court's finding that she made minimal progress toward addressing the causes that led to A. being placed outside the home was inaccurate. More particularly, she claims that (1) the petition did not assert specific dangers resulting from mother's medical marijuana use, (2) she resolved the allegation pertaining to her mental health and (3) by obtaining her own home she alleviated concerns regarding the home she once shared with a live-in boyfriend. Mother also alleges she obtained employment, participated in all visits with A., and completed several required classes, thus, her progress was more than minimal.

At the disposition hearing, the juvenile court found, in relevant part:

> "[THE COURT]:  [Mother] knows about the child's medical conditions.  She has attended the doctors' visits and so forth.  But the underlying concerns that were expressed by [the agency's attorney] do remain, and the—getting the [medical marijuana] card yesterday from what appears to be some other different doctor, not Dr. Thacker, and not—and

4.

not leveling with [Dr. Thacker] as to what she's been doing is of great concern. [¶] … [¶]

"The mother has made minimal progress toward alleviating or mitigating the causes for the child's placement in out-of-home care. [¶] … [¶]

"The mother's ordered to participate in counseling for parenting, child neglect and substance abuse and to comply with the recommendations of her doctor regarding her mental health.

"She is to submit to random, unannounced urine drug tests on at least a monthly basis."

**The Petition**

Mother argues that allegation b-1 of the petition "concerned Mother's medicinal use of marijuana while she was pregnant," and the subsequent positive result for that drug shortly after A.'s birth, but that "no report was made or evidence presented … that Mother's medicinal use of marijuana created" a risk to A. as affecting her ability to parent. To the degree mother can be understood to challenge the sufficiency of the petition, her claim lacks merit.

The petition filed contains the following allegation:

"b-1 On or about May 15, 2012, the mother … used Marijuana while pregnant with the child, [A.]. The mother used Marijuana throughout her pregnancy with the child. The child's meconium tested positive for Marijuana on June 1, 2012 at the time of the child's birth. On June 12, 2012, the mother tested confirmed positive for Marijuana at a level indicated to be 0.30uG/mL. On June 26, 2012, the mother 'had a couple of hits' of Marijuana. On June 27, 2012, the mother tested confirmed positive for Marijuana indicated to be 0.10uG/mL. The mother suffers from depression and uses Marijuana to self medicate."

Putting aside the fact the sufficiency of a petition cannot be challenged for the first time on appeal (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 82-83), the foregoing allegation is sufficient.

In dependency proceedings, the petition must "provide 'meaningful notice' that must 'adequately communicate' social worker concerns to the parent." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1037, quoting *In re Fred J.* (1979) 89 Cal.App.3d 168, 177;

5.

see also *In re Christopher C., supra,* 182 Cal.App.4th at p. 83.) A parent should be given notice of the specific factual allegations facing her with sufficient particularity, thus permitting her to properly defend the charge. (*In re Fred J.*, *supra*, at p. 175.) Relevant here, a petition alleging that a child comes within subdivision (b) of section 300 must allege that the child has suffered, or substantial risk exists that the child will suffer, serious physical harm or illness as a result of the parent's substance abuse. It must establish the severity of the physical harm and that the acts may continue into the future. (See *In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 823.)

Here, the petition sets forth the Department's concern regarding mother's use of marijuana during her pregnancy and continuing thereafter. It established harm with the presence of tetrahydrocannabinol (THC) in A.'s meconium, and mother confirmed continued use of marijuana in the month following A.'s birth. Plainly the Department was concerned with mother's use of marijuana to "self medicate." Mother had meaningful notice regarding the social worker's concerns. Those concerns were pled with sufficient particularity to allow mother to meet the charge that the Department believed her use of marijuana presented a substantial risk of serious physical harm. (*In re T.V.* (2013) 217 Cal.App.4th 126, 131 [factual allegations need not reiterate social worker's report; petition must plead essential facts].)

We note that mother's characterization of her use of marijuana as "medicinal" is disingenuous on this record. Initially mother claimed, as is noted in the petition, that she used marijuana to treat depression. However, at that time of the jurisdictional hearing, mother testified she did not have a medical marijuana card. It was not until the dispositional hearing in December 2012 that mother testified differently. On that occasion she claimed to use marijuana to treat chronic leg and back pain. And, on that basis, mother obtained a medical marijuana card the day prior to the dispositional hearing. Therefore, with regard to the allegation in the petition concerning mother's marijuana use, that use was arguably not medicinal or legal in the sense it was sanctioned by any medical professional.

6.

### A. *Medical Marijuana Use*

Relying upon *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1346, mother argues there was no evidence that her use of medicinal marijuana affected her ability to parent her daughter. No one reported she was "under the influence of marijuana, smelled of marijuana, or that [her] use was negatively affecting her behavior." She claimed that although A.'s meconium reflected her use of marijuana, "no evidence was presented that this resulted in addiction or specific harm" to A. Mother claims her continued marijuana use and the positive tests associated therewith were "to be expected, given [her] medicinal use of marijuana."

We find it important to note, again, that mother's characterization of her use of marijuana as medicinal is suspect. Mother claimed initially to be using marijuana to treat her depression, without the benefit of doctor oversight. Yet later, mother claimed she used marijuana to treat chronic back and leg pain. She also testified at the hearing that she told her mental health care provider of her marijuana usage. However, the doctor's records reveal otherwise: Mother denied the use of marijuana. In any event, we find the record is sufficient to support the juvenile court's dispositional finding on this basis.

Mother's reliance upon *Jennifer A. v. Superior Court*, *supra*, 117 Cal.App.4th 1322 does not assist her. In *Jennifer A.*, the appellate court concluded the evidence was insufficient to support the finding that returning the minors to the mother's custody would create a substantial risk of detriment pursuant to section 366.22. (*Jennifer A.*, *supra*, at p. 1346.) In that case, the minors had not been removed from the mother's custody due to the mother's drug use. Instead, the minors were removed because the mother left them alone on one occasion to go to work, believing that the father (whose car had broken down, unbeknownst to her) would arrive shortly to care for them. (*Id*. at pp. 1343-1344.) At the section 366.22 hearing, the evidence established that the mother had complied with the reunification plan, had been employed for two years and recently received a promotion, was cooperative with the agency, had always acted appropriately, and had displayed appropriate parenting skills. There was no evidence of a history of

mental illness, incarceration, or a substance abuse problem affecting her parenting skills. The court found the mother's one positive drug test and several missed or diluted tests between the 12-month review report/hearing and the 18-month review report/hearing did not mean that "the children's return to [her] would create a *substantial* risk of detriment to the physical or emotional well-being of the children in light of the factors in this case militating in favor of their return." (*Jennifer A. v. Superior Court*, *supra*, at p. 1346.)

Significantly, the children were removed in *Jennifer A.* for a reason other than the mother's drug use: She had left them alone on one occasion to go to work. Here, on the other hand, A. was ordered detained because her meconium discharge revealed the presence of THC, mother was self-medicating depression with marijuana, and mother's home at the time of A.'s birth was unacceptable. Further, unlike the mother in *Jennifer A.*, mother does not yet have a history of compliance with reunification services. The mother in *Jennifer A.* had completed 18 months of court review, including completion of drug testing and drug programs and had 84 drug-free tests. (*Jennifer A. v. Superior Court*, *supra*, 117 Cal.App.4th at p. 1343.) Here, in contrast, at the time of the disposition hearing, mother had made changes to the environment within which A. would reside, but only within the two months prior to the hearing. Also, mother continued to test positive for marijuana despite advising her mental health provider that she was no longer using the substance, and mother had only recently begun using the substance with a physician-issued medical marijuana card. In fact, her use of marijuana had only been legal for *one day* prior to the dispositional hearing. Moreover, she had yet to enroll in substance abuse counseling.

More specifically, the record reveals that mother was subject to seven drug tests. On each occasion she tested positive for illegal marijuana use. The positive results are dated June 19, July 6, August 16, September 28, October 1 and 17, and November 15, 2012. Mother saw her mental health provider on August 30, September 13 and

October 11, 2012. Yet, on each occasion she denied the use of marijuana.[2] We think mother's dishonesty speaks directly to her parenting judgment.

Additionally, mother's testimony at the dispositional hearing reveals that her use of marijuana presents a substantial risk that affects her ability to parent A. Mother testified that she only smokes marijuana at night in order to help her sleep. She testified she would have "a couple hours" to sleep off its effects before she would have to get up and care for A.. She did not believe it would negatively affect her ability to care for A. during those few hours because she claimed to be a light sleeper. The court was free to find mother's testimony not credible. (*In re Heather A., supra*, 52 Cal.App.4th at p. 193.)

From this evidence, it was reasonable for the juvenile court to infer mother's marijuana use would affect her ability to parent.

### B. Mental Health

Mother contends that she resolved allegation b-2 of the petition because she obtained mental health treatment, was regularly attending counseling, and was compliant with the medication prescribed by her doctor. As a result, she claims her progress was not minimal and that she had "completely mitigated the cause" for A.'s out-of-home placement on this basis.

The petition alleged that mother "suffers from an undiagnosed mental illness. The mother has auditory and visual hallucinations including hearing whispers and seeing ghosts. The mother suffers from depression and uses Marijuana to self medicate."

Here, the juvenile court's primary concern at disposition was mother's continued use of marijuana. The court did not expressly find that mother's progress in the area of her mental health was minimal; it was said in an overall context. To the degree the

---

[2]On several occasions, prior to obtaining a medical marijuana card, mother claimed she intended to quit using marijuana. On July 23, 2012, mother told the social worker that she did not "plan on using, and will do anything to get her daughter home." Two days later, during a family decision meeting, mother and then boyfriend "Matthew agree[d] to stop using marijuana." On October 24, 2012, mother told the social worker that she was no longer using marijuana. Instead, months later, mother was still using marijuana illegally.

evidence established that mother was not truthful with her mental health care provider concerning her illegal use of marijuana and that she continued to use marijuana against her physician's advice, such a finding is supported by the record. On at least three occasions, when treated by her mental health provider, Swati Thacker, M.D., mother denied the use of marijuana. Mother also claimed to understand the doctor's concerns about mixing psychotropic drugs, such as the Lexapro she was prescribed, with substances such as marijuana. Dr. Thacker's records contradict mother's testimony at the hearing that she had advised her doctor about her use of marijuana. From this evidence it was reasonable for the juvenile court to conclude mother's progress in addressing her mental health issues had been minimal.

### C. *Employment, Visitation and Completion Issues*

Mother challenges the court's findings with regard to the allegation set forth as b-3 of the petition:

> "On June 12, 2012, the mother['s] home had a foul smell of urine, cigarette smoke, and rotting food. The kitchen had several flies, the dishes were overflowing, and the home had several full ashtrays of cigarette butts. There were large piles of clothing found in the bathroom and a foul odor was present. The mother's bedroom has a hole in the bottom of the wall. A bedroom in the home contained mold damage due to a roof leak. The living room ceiling above the wood burning fireplace has a large hole, with shards of ceiling sticking down. On August 10, 2012, the carpeted floor in the living room had a pile of dog feces, dog urine stains and the smell of dog urine. There are [a] total of five indoor dogs. There is a non covered air vent. On a desk there were cigarette butts in an ashtray. There were cigarette butts in an ashtray on top of a window fan. One of the bathroom sinks is not operable. In a shower stall the paint is peeling. Around the bathtub outer edge there is a cigarette butt. In the shower drain there are cigarette butts."

Mother contends that at the time of the disposition hearing, she was living on her own in an approved residence. She was no longer living with her boyfriend Matt, with whom she had been residing at the time the petition was filed. Because her new home presented no environmental concerns, and because she was no longer living with her

10.

boyfriend, she claims her progress was not minimal and she had completely mitigated the cause for A.'s out-of-home placement on this basis.

But as noted above, the juvenile court's primary concern at disposition was mother's continued use of marijuana. The court did not expressly find that mother's progress in the area of her home environment was minimal; it was said in an overall context. The juvenile court heard mother's testimony that she had been living on her own since approximately November 1 of that year. It heard testimony that mother's new home had been visited on three occasions and that no one had voiced any concerns with regard to the home environment. Mother's testimony in this regard was not contradicted. Nevertheless, there is other evidence concerning the home environment from which the court could have assigned a "minimal progress" label.

Regardless of mother's new home environment, the evidence obtained at the disposition hearing also revealed that mother continued to smoke cigarettes. When asked whether anyone had indicated to her that exposure to cigarette smoke or smell could be detrimental to her daughter, mother indicated "[e]verybody" had told her so. She claimed she would quit smoking once she was given custody of her daughter.[3]

A. was born prematurely. As a result, she was a high-risk infant and would continue to be so for the first year of her life. Her lungs were underdeveloped and environmental concerns were high, particularly those associated with cigarette smoking and secondhand smoke. Mother herself testified at the disposition hearing that A.'s breathing "has sounded raspy from day one." Testimony taken during the jurisdictional proceedings addressed the importance of the concern that A. be protected from the environmental risk presented by cigarette smoke. Smoking cessation was recommended to mother early on.[4]

---

[3]Mother previously claimed, in June, that she was "'getting ready to quit pretty soon, next couple weeks.'"

[4]The foster home within which A. had been placed did not include anyone who smoked cigarettes.

Based upon the record, it was reasonable for the juvenile court to conclude that mother's progress in addressing the potential environmental dangers to A. had been minimal. There continued to be a risk to A. of the negative effects of secondhand cigarette smoke. (See *In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 452.)

Mother argues that in addition to addressing the causes that led to A.'s out-of-home placement, she made "other progress that went beyond 'minimal,'" including obtaining employment, maintaining appropriate visits with A. and attending related medical appointments, and completing courses in parenting and neglect, shaken baby syndrome, CPR and car seats. There is no evidence to suggest the juvenile court did not consider these factors. As previously noted, it is plain from the record that the court was primarily concerned with mother's continued use of marijuana and the fact that she dishonestly represented to her mental health care provider that she was no longer using that substance.

It is also worth noting that mother had maintained employment for less than two months at the time of the disposition hearing. More significantly however, mother had not yet completed, nor even enrolled in, substance abuse counseling.[5] Thus, to the degree mother infers she was compliant with the recommended counseling, she is wrong.

In sum, on this record, and viewing the evidence in the light most favorable to the juvenile court, we find there is sufficient evidence to support the juvenile court's findings

---

[5]In response to an inquiry as to whether she had "signed up for or began attending" such counseling, mother replied, "Not at the moment, no." When asked this same question at the earlier jurisdictional hearing, mother testified as follows:

"[MOTHER'S ATTORNEY]: Okay. Are you attending any drug diversion or substance abuse classes at this time?

"[MOTHER]: Not at the moment. I went in to sign up and he was busy. And I haven't had a chance to talk to him."

In light of its concern about mother's continued marijuana use, it would not have escaped the juvenile court's notice that nearly three months had passed between the jurisdictional and dispositional hearings and yet mother had not yet begun substance abuse counseling.

12.

that mother's progress in mitigating the causes that led to A.'s out-of-home placement was minimal. (*In re Heather A., supra*, 52 Cal.App.4th at p. 193.)

## III.    The Finding That A. Faced a Substantial Risk if Returned to Mother's Care

Mother contends that "substantial evidence" does not support the juvenile court's finding that A. faced a substantial risk if she were returned to mother's care. She claims that because she addressed her mental health issues, and had found a suitable place to live, coupled with the fact no evidence was presented to establish that her medicinal use of marijuana would impair her parenting ability, the court's finding was based upon speculation alone. We do not agree.

Mother's citation to *In re David M*. (2005) 134 Cal.App.4th 822 is misplaced. In *David M.*, the appellate court reversed the juvenile court's jurisdictional order because there was no evidence tying the mother's marijuana use to actual harm or a substantial risk of serious harm to the minors. The mother in *David M*. tested positive for marijuana while pregnant with one child and did not receive prenatal care. However, both of her children tested negative for marijuana at birth. The mother claimed her positive drug test for marijuana metabolites was due to being in the presence of others who were using marijuana. Moreover, the mother tested negative for drugs approximately 18 times during the four-month period between the detention and jurisdiction hearings, and all of the evidence of her prior substance abuse was derived from four-year-old reports. (*In re David M.*, *supra*, at pp. 830-831.) The court observed, "The evidence was uncontradicted that David was healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home." (*Id*. at p. 830.)

*In re David M*. is factually distinguishable. First, mother's marijuana use here was recent and documented. There was no reliance on four-year-old reports to document the alleged drug use; she admitted using it during her pregnancy and continued to use the substance illegally until the day prior to the dispositional hearing when she obtained a medical marijuana card. Unlike the children in *David M.*, A.'s meconium at birth tested positive for THC. Second, the mother in *David M*. submitted to numerous drug tests, all

of which were negative. Here, mother tested positive for the illegal substance on every occasion, while she denied use of the substance to her mental health care provider and social workers. Third, the mother in *David M.* was caring for her older child and there was no evidence that she was unable to care or protect him. Here, A. was mother's first child, born prematurely and considered to be at risk for the first year of her life. A. had never resided with mother, and mother's visits were limited to two hours per week. Thus, this case is significantly different from *David M.* and does not suggest a similar result.

Mother also relies upon *In re Drake M.* (2012) 211 Cal.App.4th 754 to support her position. There, the agency alleged a child was at risk of serious physical harm because the child's father "(1) continued to test positive for marijuana on drug screens throughout the dependency proceedings; (2) admitted to smoking marijuana up to four or five times per week; and (3) [transported the child] from daycare and cared for him alone four hours after smoking marijuana." (*Id.* at p. 764.) *Drake M.* concluded the evidence failed to show the father was a substance abuser or that he had failed or was unable to supervise or protect the child. On the latter point, *Drake M.* noted "father possessed a valid recommendation from a physician to use marijuana for treatment of his chronic knee pain. His continuing usage and testing positive for cannabinoids on drug screens, without more, is insufficient to show [the child] was at substantial risk of serious physical harm or illness." (*In re Drake M.*, at p. 768.) The court concluded the agency had failed to show a link between father's usage of medical marijuana and risk of serious physical harm or illness to the child. (*Id.* at pp. 768-769.)

Here, as noted previously, mother did not have a valid recommendation from a physician to use marijuana until *the day prior* to the dispositional hearing. Thus, her usage throughout these proceedings was illegal and contrary to the advice of her mental health care provider. Moreover, unlike the father in *Drake M.* who consistently asserted and could establish his use of marijuana-treated chronic knee pain, mother's reason for its use was inconsistent. Mother initially asserted she used marijuana during her pregnancy with A. to increase her appetite and to treat depression, and she continued to use

14.

marijuana after A.'s birth to treat depression. However, at the disposition hearing, mother testified she used marijuana to treat chronic leg and back pain because it helped her sleep. Moreover, unlike *Drake M*., there is "more" in this case—mother was dishonest with her mental health care provider. Mother was reporting to Dr. Thacker that she was not using marijuana—an inaccuracy established by both mother's own testimony and by the toxicology results. Mother's use of marijuana was illegal and in disregard of Dr. Thacker's advice to avoid such substances.

In *In re Alexis E.*, the court found as follows:

> "… While it is true that the mere use of marijuana by a parent will not support a finding of risk to minors [citations], the risk to the minors here is not speculative. There is a risk to the children of the negative effects of secondhand smoke.

> "Health and Safety Code section 11362.79 states that nothing in the statutory provisions for the state's voluntary medical marijuana program (Health & Saf. Code, § 11362.5 et seq.) authorizes a person lawfully using medical marijuana to use it 'within 1,000 feet of the grounds of a school, recreational center, or youth center, unless the medical use occurs within a residence,' or to use it on a school bus, or in a motor vehicle that is being operated. A reasonable inference to be drawn from this prohibition is that use of marijuana near others can have a negative effect on them.

> "Section 300.2 provides that the purpose of the provisions in the Welfare and Institutions Code relating to dependent children is to provide protection for children being harmed or who are at risk of being harmed. Section 300.2 further states that '[t]he provision of a home environment free from the negative effects of substance *abuse* is a necessary condition for the safety, protection and physical and emotional well-being of the child.' (Italics added.) We cannot fathom that the Legislature intended that negative effects on children from marijuana smoke would be unacceptable if it were being smoked outside the medical marijuana law, but acceptable if the person smoking the substance in their home were doing it legally. Or perhaps stated another way, even legal use of marijuana can be abuse if it presents a risk of harm to minors." (*In re Alexis E., supra*, 171 Cal.App.4th at p. 452.)

The negative health effects of secondhand smoke are well known. (See Health & Saf. Code, § 104350, subd. (a)(5) [legislative finding that involuntary smoking is a cause of disease, including lung cancer, in healthy nonsmokers]; *Boeken v. Philip Morris, Inc.*

15.

(2005) 127 Cal.App.4th 1640, 1693 [citing 1993 Environmental Protection Agency report conclusion that secondhand smoke kills 3,000 nonsmoking Americans each year].)  On this record, there is evidence that mother's use of marijuana affects her ability to parent.

This is not a situation wherein a parent's use of either cigarettes or marijuana and the effect of secondhand smoke present the only risk to an otherwise healthy child. Rather, here, A. is a high-risk infant, born significantly premature.  While the record establishes she was progressing and healthy, it also establishes that in light of her premature birth—and underdeveloped lungs—she remains high risk for the first year of her life.  At the time of the disposition hearing, A. was a high-risk infant at the age of five months.  Mother continued to smoke cigarettes and continued to use marijuana.  It was reasonable for the juvenile court to conclude that A. faced a substantial risk of harm if returned to mother's care.

## IV.    The Finding Regarding A.'s Removal

Mother contends there is insufficient evidence to support the juvenile court's order for continued removal of A. from her custody.

At the time of the proceedings, section 361, subdivision (c)(1) provided:

> "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances …:

> "… There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody.  The fact that a minor has been adjudicated a dependent child of the court pursuant to subdivision (e) of Section 300 shall constitute prima facie evidence that the minor cannot be safely left in the physical custody of the parent or guardian with whom the minor resided at the time of injury.  The court shall consider, as a reasonable means to protect the minor, the option of removing an offending parent or guardian from the home.  The court shall also consider, as a reasonable means to protect the minor, allowing a nonoffending parent or guardian to retain physical custody as long as that parent or guardian

16.

presents a plan acceptable to the court demonstrating that he or she will be able to protect the child from future harm."

"The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus of the statute is on averting harm to the child." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) Although the juvenile court's findings must be based on clear and convincing evidence, we review an order removing a child from parental custody for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

> "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.) On a challenge to an order removing a dependent child from his or her parent, we 'view the record in the light most favorable to the order and decide if the evidence is reasonable, credible and of solid value.' (*Kimberly R. v. Superior Court* [(2002)] 96 Cal.App.4th [1067,] 1078.) We draw all reasonable inferences from the evidence to support the findings and orders of the dependency court. (*In re Heather A.* [(1996)] 52 Cal.App.4th [183,] 193.)" (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462-463.)

> Here, the juvenile court found as follows:

> "There is clear and convincing evidence there's a substantial danger to the physical health, safety, protection or physical or emotional well-being of the child or there would be if the physical custody of the child is not removed from the parent and there are no reasonable means to protect the child's physical health without removal of the child from the physical custody of the mother.

> "The social worker solicited and integrated into the case plan the input of the child's family and other interested parties.

> "The Department … has complied with the case plan by making reasonable efforts and providing reasonable services to prevent or eliminate the need for removal of the child from the home and to make it possible for the child to safely return home and to complete whatever steps are necessary to finalize the permanent placement of the child.

> "This child was ordered removed from the physical custody of the mother based on the facts set forth in the sustained petition, the report of the social worker and the evidence presented.

"The status of the child is reviewed under Section 366(a) ….

"The child's out-of-home placement is appropriate and necessary."

Mother contends removal was improper because she had addressed her mental health issues and found a suitable place to live. She contends no evidence was presented to show her use of marijuana affected her ability to parent. She points to the fact A. "was no longer a fragile preemie," had traveled out of state, and had made significant health gains. Mother asserts "[a]ll that existed at the time of the disposition hearing, six months after [A.]'s birth, was speculation that Mother's medicinal use of marijuana might put [A.] at risk of serious physical harm." Finally, mother claims the juvenile court failed to consider less drastic measures than continued removal.

As discussed above, mother's mental health issues had not been completely addressed. Additionally, she was dishonest with her mental health care provider and others about her illegal use of marijuana. We believe that speaks to her ability to parent. Also, as noted above, while mother had found a more suitable home, she had only resided in the home for less than two months. In light of the evidence in this record, it was not unreasonable for the juvenile court to have reservations about mother's ability to maintain a suitable environment for A. in the long term. Mother's previous efforts to maintain a suitable environment were inconsistent.

Further, while the record establishes that A.'s overall health continued to improve, and she did in fact travel with her foster family out of state, the record also established that due to A.'s premature birth at 29 weeks, she is considered to be a high-risk infant for the first year of her life. A.'s lungs were underdeveloped at birth; smoking and secondhand smoke presented a significant risk. A. was less than five months old at the time of the disposition hearing. Thus, she was still considered to be a high-risk infant. Moreover, the fact A. was approved to travel with her foster family out of state does not mean her high-risk infant status was negated by that travel. It is important to note that no

one in the foster home smoked, therefore, A. was not subject to the same risks with her foster family as those presented by her mother's care.[6]

We have already addressed mother's claim that her use of medicinal marijuana does not put A. at a substantial risk of harm. As thoroughly discussed above, we find to the contrary and need not repeat the analysis here.

For all of the reasons given above, we cannot agree with mother that the juvenile court failed to consider less drastic measures. There was sufficient evidence before the juvenile court to indicate that even strict supervision by the Department would not protect A. from the possibility of harm.

To conclude, the juvenile court's order was based upon substantial evidence. It was focused, as it should have been, on averting any potential harm to A. (*In re Cole C., supra,* 174 Cal.App.4th at p. 917; *In re J.K., supra,* 174 Cal.App.4th at p. 1433.)

## V.       The Fundamental Right to Parent and the Ability to Bond

Lastly, mother argues that because the juvenile court found she made minimal progress at the dispositional hearing, and because that finding is not supported by the evidence, she has been denied the fundamental right and opportunity to parent and bond with her daughter. She provides a citation to *In re K.P.* (2012) 203 Cal.App.4th 614 as "a cautionary tale about the potential implications for Mother and [A.] as a result of the juvenile court's minimal progress finding." This argument is simply a rehash of her earlier arguments.

As explained in detail above, we have already determined the juvenile court's challenged findings are supported by sufficient or substantial evidence. However, mother is correct that the facts of *In re K.P.* provide a cautionary tale. Given the fact mother's parental rights have not been terminated, and she has the opportunity to correct the

---

[6]When mother complained about or objected to A. travelling out of state with the foster family, she did so on the basis that her child was "'high risk.'" Here, she uses the fact that the trip occurred to assert A. is a normal, healthy infant. These contrary positions cannot be reconciled. In any event, the record establishes that medical professionals consider premature infants such as A. to be high risk for the first year of life.

deficiencies identified at the dispositional hearing, and to effect change during reunification, we hope she will do so.

## DISPOSITION

The dispositional orders entered on December 20, 2012, are affirmed.